IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DUANE H. SCEPER,

    Plaintiff,                              No. CIV S-09-0801 GEB EFB

    vs.

TRUCKS PLUS, and
MARK R. WARNOCK,

    Defendants.                      FINDINGS AND RECOMMENDATIONS
_____/

    This case was referred to the undersigned pursuant to Eastern District of California Local

Rule 72-302(c)(19) and 28 U.S.C. § 636(b)(1) for hearing on plaintiff's motion for entry of

default judgment against defendants Trucks Plus and Mark R. Warnock.  On August 19, 2009, a

hearing on the motion was held, and James Mason appeared on behalf of plaintiff.  Defendants

made no appearance.  For the reasons that follow, and as stated on the record at the hearing, the

court recommends that plaintiff's application for entry of default judgment be granted in part and

denied in part.

I.    BACKGROUND

    Plaintiff initiated this action on November 20, 2008, alleging violations of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; various violations of the California

Civil Code; and negligence per se.  Compl., Dckt. No. 1.  Plaintiff alleges subject matter

1

1    jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  *Id.* ¶¶ 1-2.  A certificate of service, filed

2    April 7, 2009, demonstrates that the summons and complaint were personally served on

3    defendants on March 31, 2009 in Redding, California.  Dckt. No. 7.

4         On May 20, 2009, pursuant to plaintiff's request, the Clerk of Court entered the default of

5    both defendants.  Dckt. Nos. 8, 9.  Plaintiff's request for entry of default provides that defendant

6    "failed to file an answer or other responsive pleading at all."  Dckt. No. 8.

7         On June 8, 2009, plaintiff filed a motion for default judgment and injunction (dckt. Nos.

8    10-12) and on June 16, 2009, filed an amended motion for default judgment.  Dckt. No. 13.  On

9    June 25, 2009, plaintiff served via email Jerry Pickering, who plaintiff had been corresponding

10   with regarding the case, and who plaintiff was informed and believed was "[d]efendants' last

11   known attorney of record," with a copy of the motion and amended motion for entry of default

12   judgment and all supporting documents.  Dckt. No. 16.  While defendants were not personally

13   served with plaintiff's motion and amended motion for default judgment, the documents were

14   properly served on Mr. Pickering.  Additionally, copies of email correspondence attached to

15   plaintiff's counsel's June 25, 2008 declaration (dckt. No. 16) demonstrates that defendants had

16   actual knowledge of the pending motion.  After multiple emails between plaintiff's counsel and

17   Mr. Pickering regarding plaintiff's intention to seek a default absent settlement, in an email dated

18   May 19, 2009, Mr. Pickering told plaintiff's counsel that defendants had instructed him "to do

19   nothing" because defendants were "in the process of filing bankruptcy."[1]  Dckt. No. 16-2.

20   Although plaintiff was not required to serve these non-appearing defendants with a copy of the

21   motion[2], the fact that defendants were aware of the motions and failed to oppose it further

---

22    

23       [1] No Notice of Filing of bankruptcy has been filed in this action and plaintiff has not
     filed anything to indicate that a bankruptcy petition was ever filed.

24       [2] *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought
     has appeared personally or by a representative, that party or its representative must be served
25   with written notice of the application at least 3 days before the hearing."); 5(a)(2) ("No service is
     required on a party who is in default for failing to appear"); *see also Wilson v. Moore & Assocs.,*
26   *Inc.*, 564 F.2d 366, 369 (9th Cir. 1977) (finding that informal contacts between the parties do not

indicates that they have chosen not to defend this action.

Plaintiff's amended motion for default judgment states:

> Plaintiff is entitled to a judgment in the amount of $24,000.00 for six (6) violations of Cal. Civ. Code § 51; $25,000.00 for violation of Cal. Civ. Code § 51.7; injunctive relief; attorney fees of $12,725.00; $477.25 in costs and other relief set forth in the proposed Order and Judgment filed herewith, and as detailed in the Declarations of Duane H. Sceper and James C. Mason.

Dckt. No. 13.

Plaintiff's proposed order and injunction requests the following order:

1.  Defendants Trucks Plus and Warnock are jointly and severably liable to plaintiff for Discriminatory Practices in Public Accommodations and Negligence Per Se violations of the ADA and California's Unruh Act.

2.  Defendant Warnock is liable to plaintiff for committing threats of intimidation and violence against plaintiff in violation of California Civil Code § 51.7.

3.  Plaintiff is awarded $24,000 in statutory damages pursuant to California Civil Code § 52(a).

4.  Plaintiff is awarded $25,000 in statutory damages pursuant to California Civil Code §§ 51.7 and 52(b).

5.  Plaintiff is awarded $12,725 in attorney's fees and $477.25 in costs pursuant to 42 U.S.C. §§ 12188(a), (b) and 12205 as well as California Civil Code § 52(a).

6. Plaintiff Duane H. Sceper is entitled to the following Injunctive Relief: Defendants Trucks Plus and Mark R. Warnock shall remove all architectural barriers per 28 C.F.R. Sec. 36.304 located at 3263 BECHELLI LN., REDDING, CA 96002.

Dckt. No. 17.

////

////

---

"constitute[] the equivalent of a formal court appearance requiring strict 55(b)(2) notice in circumstances . . . where the plaintiff's 'informal contacts' provided actual, unqualified notice that delay in answering the complaint would result in default"); *Mantic Ashanti's Cause v. Darwish Plaza*, 2006 WL 1360969, at *1 (S.D. Cal. Apr. 21, 2006) (noting that "a defendant may be deemed to have 'appeared' for purposes of Fed.R.Civ.P. 55 if the defendant clearly manifested an intent to defend the action.").

II.   <u>DISCUSSION</u>

It is within the sound discretion of the district court to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).  However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

A.   <u>Americans with Disabilities Act</u>

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).  Under the ADA, the term readily achievable means "easily accomplishable and able to be carried out without much

difficulty or expense."  42 U.S.C. § 12181(9).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  Further, "[t]o succeed on a ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable."  *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

Although "[t]he Ninth Circuit has yet to rule on whether the plaintiff or defendant bears the burden of proof in showing that removal of an architectural barrier is readily achievable," the Circuit, and various district courts throughout the Circuit, have often applied the burden-shifting framework set forth in *Colorado Cross Disability Coalition v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001).  *Vesecky v. Garick, Inc.*, 2008 WL 4446714, at *2 (D. Ariz. Sept. 30, 2008) (citing *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1202 (9th Cir. 2007) and various district court cases).  In *Colorado Cross*, the Tenth Circuit stated that the "[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable" and that if plaintiff meets that burden, the burden shifts to the defendant, who "bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable."  *Colo. Cross Disability Coal.*, 264 F.3d at 1006.

Recently, in *Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043 (9th Cir. 2008), the Circuit addressed *Colorado Cross* directly for the first time.  The court declined to apply *Colorado Cross*'s burden-shifting framework in the context of barrier removal from within historic buildings and instead placed the burden squarely on the defendant.  The court reasoned that by requiring "the entity undertaking alterations [to] consult with the State Historic

1  Preservation Officer," the ADA guidelines for historic buildings place the burden on the "party

2  with the best access to information regarding the historical significance of the building" rather

3  than "on the party advocating for remedial measures."[3]  531 F.3d at 1048.

4      In a recent opinion addressing both *Colorado Cross* and *Molski*, the District of Arizona

5  stated that while it was "mindful of the informational imbalance that may exist between plaintiffs

6  and defendants with respect to the ease and cost with which architectural barriers may be

7  removed . . . until the Ninth Circuit provides additional and specific instruction to the lower

8  courts [it] will follow the overwhelming majority of federal courts that apply the burden-shifting

9  framework of *Colo. Cross*, specifically in cases where a historic building is not at issue."

10  *Vesecky*, 2008 WL 4446714, at *2.  This court agrees, especially in the context of a default

11  judgment proceeding in which defendants have not appeared.  42 U.S.C. § 12181(9).

12      Here, plaintiff alleges that he is disabled; that defendants' business is a place of public

13  accommodation; that plaintiff was denied access to defendants' business because of plaintiff's

14  disability; and that defendants' business has architectural barriers.  Additionally, although

15  plaintiff does not specifically allege that removal of those barriers is readily achievable, he

16  alleges that "[p]ursuant to 42 U.S.C. § 12188(a), *and 28 C.F.R. § 36.304*, Defendants are

17  required to remove architectural barriers to their existing facilities."  Dckt. No. 1, ¶ 18 (emphasis

18  added).  Section 36.304 specifically provides that "[a] public accommodation shall remove

19  architectural barriers in existing facilities, including communication barriers that are structural in

20  nature, *where such removal is readily achievable*, i.e., easily accomplishable and able to be

21  carried out without much difficulty or expense."  28 C.F.R. § 36.304(a) (emphasis added).

22  Plaintiff further alleges that "the facilities were in violation of the requirements of Title 24 of

23  California's Building Code requirements, DOJ regulations and the ADAAG . . . ." *Id.* ¶ 11.  As

24  stated above, the DOJ regulations and the ADAAG only require removal of architectural barriers

25

26      [3]  The court also stated that "congressional intent behind the ADA support[s] placing the burden of production on the defendant."  531 F.3d at 1048.

in existing facilities "where such removal is readily achievable."  Further, Section 36.304(b)

provides that "[c]reating designated accessible parking spaces" is an example of a typical "step[]

to remove barriers," and plaintiff's primary complaint about defendants' facilities is that they

lack "legally compliant disabled parking spaces."  Dckt. No. 1, ¶ 11.  Additionally, the

injunction that plaintiff seeks on default judgment only requires defendants to "remove all

architectural barriers per 28 C.F.R. Sec. 36.304 located at 3263 BECHELLI LN., REDDING,

CA 96002."[4]  Dckt. No. 17 at 3.  Because the injunction is specifically limited to removal of

barriers "per 28 C.F.R. Sec. 36.304," it would only require removal of those barriers which are

"readily achievable."

Because plaintiff's allegations are taken as true on default, the court finds that plaintiff

has made out a *prima facie* Title III discrimination claim.  Additionally, the court finds that the

majority of the *Eitel* factors weigh in favor of granting default judgment to plaintiff on that

claim.  Therefore, the court recommends that plaintiff be granted default judgment against

defendants on his ADA claim and award plaintiff an injunction requiring defendants "to alter

[their] facilities to make such facilities readily accessible to and usable by individuals with

disabilities to the extent required by [the ADA]."  42 U.S.C. § 12188(a)(2).  Specifically, the

court recommends granting plaintiff an injunction requiring defendants to remove all

architectural barriers identified in plaintiff's complaint, where such removal is readily

achievable, i.e., easily accomplishable and able to be carried out without much difficulty or

expense.

////

---

[4]  Additionally, although his motion for default judgment discusses defendants' obligations with regard to their "existing facilities," plaintiff's complaint alleges that "[d]efendants have newly built or altered the subject property and/or the subject facility since 1971 within the meaning of California Health and Safety Code §19959."  Compl., ¶ 8.  However, the complaint does not allege that the facilities were newly built or altered, within the meaning of the ADA, 42 U.S.C. § 19183, or that they were built or altered "later than 30 months after July 26, 1990" as stated in that section.

B.    Unruh Civil Rights Act

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  To prevail on his disability discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm. California Civil Jury Instructions (BAJI), No. 7.92 (Spring 2009).   Additionally, any violation of the ADA necessarily constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code § 51(f).

Here, plaintiff has made out a *prima facie* claim under the Unruh Civil Rights Act by alleging that defendants denied him full and equal access to defendants' goods, services, facilities, privileges, advantages or accommodations; that a motivating reason for defendants' conduct was plaintiff's disability; that he was harmed; and that defendants' conduct was a substantial factor in causing plaintiff harm.  Additionally, because plaintiff's complaint properly sets out the necessary elements for his ADA claim, plaintiff has also properly set out the necessary elements for his Unruh Civil Rights Act claim.  Therefore, and because there are no policy considerations which preclude the entry of default judgment on this claim, *Eitel*, 782 F.2d at 1471-72, the court will recommend that plaintiff's motion for default judgment on his Unruh Civil Rights Act claim be granted.

The Unruh Civil Rights Act provides for a minimum statutory damage amount of $4,000 per violation, and "any attorney's fees that may be determined by the court in addition thereto."

*Id.* § 52(a).  However, for claims filed on or after January 1, 2009, a plaintiff may only recover statutory damages "if an accessibility violation actually denied the plaintiff full and equal access, that is, only if 'the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion.'"[5]  *Munson v. Del Taco, Inc.*, 94 Cal. Rptr. 3d 685, 697-98 (2009).

Plaintiff seeks $24,000 in damages for violation of the Unruh Civil Rights Act, based on six visits to defendants' property.  Compl. ¶ 9; Am. Mot. for Def. J. at 2.  However, while plaintiff's complaint alleges that he visited defendants' property on six occasions "for the purpose of inquiring about and/or availing himself of the goods, services, facilities, privileges, advantages or accommodations operated and/or owned by defendants," Compl. ¶ 9, plaintiff states in his June 4, 2009 declaration in support of his motion for default judgment, Dckt. 10-3, ¶ 7, that on three of the six occasions, he simply drove by Trucks Plus *with the intent to patronize on a later date.*  Sceper Decl. ¶ 7; Dckt. No. 10-3.  Therefore, on three of the six occasions plaintiff did not personally encounter the violations, and was not deterred from accessing defendants' property at that time.  Therefore, plaintiff cannot recover statutory damages for those three "visits."  Accordingly, the undersigned will recommend that plaintiff be awarded $12,000 in statutory damages for defendants' violations of the Unruh Civil Rights Act, based on the three occasions in which plaintiff was deterred from accessing defendants' property due to defendants' Unruh Civil Rights Act violations.

C.      California Civil Code Section 51.7

California Civil Code section 51.7 provides that all persons within California "have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of [*inter alia*, their disability]."  To establish a claim against defendant Warnock under section 51.7, plaintiff must prove (1) that Warnock threatened or

---

[5]  Plaintiff's complaint was filed on March 23, 2009.

committed violent acts against him; (2) that a motivating reason for Warnock's conduct was his

perception of plaintiff's disability; (3) that plaintiff was harmed; and (4) that Warnock's conduct

was a substantial factor in causing plaintiff's harm.  *See* Judicial Council of California Civil Jury

Instruction (CACI), No. 3023 (June 2009).

Here, plaintiff alleges in the complaint that he "would return to the subject property but

has been threatened by violence and intimidation by [Warnock] in violation of California Civil

Code § 51.7."  Compl. ¶ 21.  Plaintiff also alleges generally that "[a]s a proximate result of the

action or inaction of Defendants and each of them, Plaintiff suffered the harm these statutes are

designed to prevent, to wit, exclusion from and/or from unequal access to goods, services and

facilities provided by Defendants to the general public and deprivation of his civil rights."  *Id.*

¶ 40.  Although plaintiff alleges that Warnock "threatened" him, that plaintiff was "harmed" as a

result, and arguably that Warnock's conduct was a "substantial factor" in causing plaintiff's

harm (since plaintiff would return to defendants' property but for Warnock's threats), plaintiff

does not allege that his disability was a "motivating reason" for Warnock's conduct.[6]  Therefore,

the court finds that plaintiff has not made out a *prima facie* claim under California Civil Code

section 51.7, and that the *Eitel* factors weigh against granting plaintiff default judgment on that

claim.  Accordingly, the court will recommend that plaintiff's motion for default judgment on his

claim under California Civil Code section 51.7 be denied.

*////*

_____

[6]  Warnock's "threat" is referenced in a letter from plaintiff's counsel, which is attached
to plaintiff's motion for default judgment.  Dckt. No. 10-13.  According to the letter, Warnock
told plaintiff's counsel to "shove the lawsuit up [his] ass" and threatened to "come to San Diego
to do so."  *Id.*  Although it could possibly be inferred from plaintiff's counsel's letter that
plaintiff's disability was a motivating reason for the threats since the letter from plaintiff's
counsel contends that the threats were made "in an attempt to threaten and intimidate [plaintiff's
counsel and his] client from pursuit of his rights under California Law and the ADA," these facts
are not pled in the complaint.  Moreover, it could also be inferred from the letter that the
threatened lawsuit was the motivation for Warnock's threat, not plaintiff's disability, and that the
threat was actually directed to plaintiff's counsel, not plaintiff.  Whether a cause of action exists
premised on retaliation is not addressed, nor is any such cause of action pled in the complaint.

D.    <u>Attorney's Fees</u>

California Civil Code section 52(a) authorizes plaintiff to recover "any attorney's fees that may be determined by the court."  In determining those fees, the court will consider what fees are reasonable, *Martinez v. Longs Drug Stores, Inc.*, 2005 WL 3287233, at *1 (E.D. Cal. Nov. 28, 2005) (citing *Engel v. Worthington*, 70 Cal. Rptr. 2d 526 (1997)).  The ADA also provides that "the court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205.  A "prevailing" party who may recover attorneys fees under the ADA is one who secures an enforceable judgment on the merits or a court-ordered consent decree, or who has been rewarded some relief by the Court.  *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).  Further, "[l]itigation expenses include items such as expert witness fees, travel expenses, etc."  *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) (citing 28 C.F.R. Pt. 35, App. A, Section-by-Section Analysis, § 35.175.)

In calculating an appropriate fee award, the court must first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate."  *Fisher v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).  This lodestar figure is presumptively reasonable and should only be enhanced or reduced in "rare and exceptional cases."  *Id*.  However, the court may adjust the lodestar figure if various factors overcome the presumption of reasonableness.  *Hensley*, 461 U.S. at 433-34.  Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 8 (9th Cir. 1996) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983)).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992), as amended on denial of reh'g, (1993) (quoting *Hensley*, 461 U.S. at 433-34).

Plaintiff seeks attorneys fees in the amount of $14,475, based on the following: 33.4 hours and $8350.00 in fees incurred communicating with defendants and preparing to file the instant motion for default judgment; 9.5 hours and $2,376.00 in fees incurred preparing the motion for default judgment, declaration, and attachments; and 15 hours and $3750.00 in fees incurred traveling to and from, preparing for, and attending the August 19, 2009 hearing.  Decl. of James Mason, Dckt. No. 10-5, at ¶ 4-5; and Supp. Decl. of James Mason, Dckt. No. 20, at ¶¶ 5-7.  Plaintiff also seeks litigation expenses and costs in the amount of $704.94, based on the following: $477.25 for filing fees and service of process; $139.20 for airfare for plaintiff's counsel to attend the hearing on the motion for default judgment; and $88.49 for plaintiff's hotel when attending the hearing.  Mason Decl., at ¶ 5; Mason Supp. Decl., at ¶¶ 5-6.

Plaintiff's counsel states in his declaration that he has "worked on ADA and disability access litigation for seven years and [has] defended approximately two hundred (200) ADA claims and cases over that time period.  ADA litigation became [his] primary emphasis of practice in or about 2005."  Mason Decl., at ¶ 3.  He further states that he "travel[s] throughout the State providing workshops, seminars, lectures and Power Point Presentations regarding compliance with the ADA and associated disability access regulations and law," and that he has published and compiled various documents "to educate the business community regarding the most common conditions which lead to ADA lawsuits."  *Id.*  Therefore, the court finds that

1   plaintiff's counsel's $250 per hour rate is consistent with the rate awarded to experienced

2   counsel in other ADA cases before the Eastern District of California, and is therefore reasonable.

3   *See Sanford v. GMRI, Inc.*, 2005 WL 4782697, at *5, n.6 (E.D. Cal. Nov. 14, 2005).

4        The court also finds that 9.5 hours and $2,375.00 in fees incurred preparing the motion

5   for default judgment, declaration, and attachments, while high, is not unreasonable.

6   Additionally, the court finds that plaintiff is entitled to $704.94 in litigation expenses and costs.

7   *Feezor v. Del Taco, Inc.*, 2005 WL 3619388, at *3 (S.D. Cal. June 23, 2005); *Robins v.*

8   *Scholastic Book Fairs*, 928 F. Supp. 1027, 1036 (D. Or. 1996).

9        However, some of the time plaintiff's counsel spent communicating with defendants and

10  preparing to file the instant motion for default judgment is excessive, especially in light of

11  plaintiff's counsel's extensive ADA experience, the straightforward nature of the case, the lack

12  of any unique legal or factual issues in the case, and the fact that plaintiff was ultimately not

13  successful on all of his claims for relief.  *See Robinson v. Chand*, 2007 WL 1300450, at *1 (E.D.

14  Cal. May 2, 2007) (reducing a fee award in an ADA case following entry of a default judgment

15  from $10,826.66 to $8,466.66); *Sanford*, 2005 WL 4782697, at *5 (reducing a fee and cost

16  award in an ADA case following settlement from $18,268.09 to $8,132.67); *Chapman v. Pier 1*

17  *Imports, Inc.*, 2007 WL 2462084 (E.D. Cal. Aug. 24, 2007) (reducing a fee and cost award in an

18  ADA case from $70,608.80 to $47,912.04).  Although the court acknowledges that plaintiff's

19  counsel spent time attempting to reach a settlement agreement with defendants' counsel, this

20  does not justify the number of hours billed here.

21       Specifically, the court finds the following time spend by plaintiff's counsel excessive:

22       •    On October 10, 2008, plaintiff's counsel spent 1.2 hours "review[ing] photos of

23            Trucks Plus" and "cross check[ing] for parking lot violations, ADAAG & CBC";

24            and an additional .5 hours researching "applicable ADAAG & CBC sections in re

25            parking specs."  In light of plaintiff's counsel's extensive ADA experience and

26            obvious familiarity with the ADAAG and CBC, as evidenced by his publications,

1   the court finds that spending 1.2 hours looking at photos of defendants' parking

2   lot and cross-checking for violations, and an additional .5 hours researching the

3   ADAAG and CBC regarding parking violations is unreasonable.  Therefore, the

4   court recommends reducing this time by 1 hour.

5   • On October 29, 2008, he spent .4 hours "review[ing a] message from Warnock

6   stating [the] property [is] ADA compliant" and spent an additional .5 hours in a

7   telephone conference with his client regarding that message.  *See* Mason Decl.

8   Ex. 8.  The message is eight sentences long and merely states defendants' efforts

9   to achieve ADA compliance.  Therefore, the court recommends reducing this time

10  by 1/2 hour.

11  • On November 11, 2009, counsel spent .7 hours "[r]eceiv[ing] and review[ing]

12  eight (8) photos from Warnock depicting non-compliant parking conditions at

13  Trucks Plus" and an additional .9 hours transmitting those photos to his client.

14  *See* Mason Decl. Exs. 9-18.  Again, in light of plaintiff's counsel's extensive

15  ADA experience and obvious familiarity with the ADAAG and CBC, the court

16  finds that this time looking at eight photos and passing them on to the client is

17  excessive and recommends that it be reduced by 1 hour.

18  • On December 4, 2008, counsel spent 1.3 hours drafting an email to Warnock.

19  That email is *six sentences long*.  It contains an attachment that plaintiff's counsel

20  acknowledges is "a publication developed and freely distributed by Architect

21  Donald Reeves and [him]self in an effort to educate the business community

22  regarding the most common conditions which lead to ADA lawsuits."  *See* Mason

23  Decl. ¶ 11, Exs. 18, 19.  This does not warrant billing 1.3 hours.  The court

24  recommends reducing this time by 1 hour.

25  • On April 7, 2009, counsel spent .5 hours e-filing returns of service of the

26  summons and complaint.  The court recommends reducing this time by .2 hours.

1    •    On May 19, 2009, counsel spent 1.6 hours drafting and e-filing a *five sentence*

2         request for entry of default.  Dckt. No. 8.  The court recommends reducing this

3         time by 1 hour.

4    Mason Decl., at ¶ 4-5.

5         For these reasons, the court recommends reducing the number of hours spent

6    "communicating with defendants and preparing to file the instant motion for default judgment"

7    by 4.7 hours, to a total of 28.7 hours and $7,175.00 in fees.  The court finds this remaining time

8    spent to be very high in comparison to other similar motions for default judgment in ADA case,

9    but within the realm of reasonableness.

10        Additionally, the court finds that 15 hours spent traveling to and from, preparing for, and

11   attending a very brief, straightforward hearing in which defendants did not appear, is excessive.

12   Plaintiff's counsel indicates that he flew from San Diego to Sacramento for the hearing and that

13   he spent 6 hours traveling each way.  However, plaintiff's office is less than 10 miles and

14   approximately 15 minutes from the San Diego airport; the flight between San Diego and

15   Sacramento is approximately one  hour and 30 minutes; and the Sacramento airport is

16   approximately 11 miles and 15 minutes from the Sacramento federal courthouse.  Even if

17   plaintiff's counsel spent a half hour traveling from his office in San Diego to the airport; two

18   hours waiting for his flight; one and a half hours on the flight; a half hour traveling from the

19   Sacramento airport; a half hour returning to the Sacramento airport; two hours waiting for his

20   flight; one and a half hours on the flight; and a half hour returning to his office in San Diego, that

21   still only totals 9 hours of travel time.  Accordingly, the court will recommend that the hours

22   spent "traveling to and from, preparing for, and attending the August 19, 2009 hearing" be

23   reduced by 3 hours, for a total of 12 hours or $3000.00 in fees.

24        Therefore, the court will recommend that plaintiff be awarded a total of $12,550.00 in

25   fees (based on 50.2 hours at $250.00 per hour).

26   ////

III.    CONCLUSION

In view of the foregoing findings, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for default judgment as to defendants Trucks Plus and Mark R. Warnock on plaintiff's ADA claim and Unruh Civil Rights Act claim be GRANTED;

2.  Plaintiff's motion for default judgment as to defendant Mark R. Warnock on plaintiff's claim for violation of California Civil Code section 51.7, be DENIED;

3.  Plaintiff be awarded judgment against defendants, jointly and severally, for statutory damages pursuant to California Civil Code section 52 in the amount of $12,000.00; for attorney fees in the amount of $12,550.00; and for $704.94 in litigation expenses and costs;

4.  Plaintiff be granted an injunction requiring defendants to remove all architectural barriers identified in plaintiff's complaint, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense; and,

5.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 2, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE